UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HEATHER MAGRUDER,
on behalf of herself and all others similarly
situated,

     Plaintiff,

v.                                    Case No: 6:23-cv-382-WWB-EJK

BELLABU BEAR LLC,
a California Limited Liability Company,

     Defendant.
_____/

**DEFENDANT BELLABU BEAR LLC'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT AND COMPEL ARBITRATION**

Defendant, Bellabu Bear LLC ("Bellabu"), files this Motion to Compel arbitration. Alternatively, pursuant to the Textile Fiber Products Identification Act (the "TFPIA"), 15 U.S.C. § 70b *et seq.*, in conjunction with the safe harbor provision of the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA"), § 501.212(1), *Fla. Stat.*, moves the Court to dismiss Counts I-III of Mrs. Heather Magruder's ("Plaintiff" or "Mrs. Magruder") complaint ("Complaint" or "Compl.") with prejudice in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"). In support thereof, Bellabu states as follows:

1

## SUMMARY OF ARGUMENT

Plaintiff's Complaint raises three Counts, all centering on the false premise that Bellabu's online written advertisement violates the TFPIA's preclusion of deceptive advertisements of textile products. (Compl., ¶¶ 51, 54, 55, 59-60). The Complaint seeks monetary relief based upon violations of the TFPIA that allegedly resulted in damages to Plaintiff, that are recoverable under the FDUTPA. Plaintiff's claim is based upon the purchase of two pairs of baby-pajamas that were advertised online as "Misty Green Bamboo Kids Pajamas" and "Mermaid Bamboo Baby Pajamas" being comprised of "95% rayon from bamboo and 5% spandex for stretch" and labeled the same. (Compl., ¶¶ 25, 35, 49-53). Yet, the gravamen of Plaintiff's "deception" allegation is that material used to make the apparel, is made from "rayon." (Compl., ¶ 25), which, ironically, Plaintiff concedes *is* made from bamboo and *was* disclosed prior to purchase and upon receipt. (Compl., ¶¶ 5, 16, 25, 35).

Not only is Bellabu's advertisement of its products expressly permitted by the TFPIA at §70b(c), discussed *infra*, Plaintiff has not and cannot plead any cognizable damages under FDUTPA, nor has Mrs. Magruder pled that any damages were the proximate result of Bellabu's supposed TFPIA violation. (*See e.g.*, Compl., at ¶¶ 51-53, generally alleging a TFPIA violation, and summarily concluding that "Plaintiff and members of the Class were damaged as a direct proximate result" of the alleged violations.") Despite Florida's Economic Loss

2

Doctrine, the strictures of FRCP Rule 8 and the heightened pleading standard of Rule 9 applicable to Plaintiff's fraud-based claims, Mrs. Magruder asks the Court to simply accept that "[a]ll damages alleged herein are the direct and proximate result of Bellabu's wrongful conduct" without pleading the necessary facts to establish proximate causation. Plaintiff likewise fails to even allege damages. (Compl., ¶ 39).

As to Counts II and III, Plaintiff reincorporates and realleges the same alleged TFPIA violations as the basis for her Fraudulent Inducement and/or Negligent Misrepresentation claims. (Compl., ¶¶ 54-55, 59-60). Yet, as with Count I, Plaintiff fails to plead how her alleged damages were proximately caused by the supposed violations. Further, Counts I-III not only fail to meet basic FRCP 8 pleading requirements but fall far short of satisfying the heightened FRCP 9 pleading requirements for her fraud-based claims. Further, though Plaintiff's deficient pleading prevents Bellabu from fully undertaking the analysis to determine whether Florida's independent tort doctrine bars Plaintiff's claim, assuming Plaintiff had sufficiently pled Counts II and III, the independent tort doctrine would bar Plaintiff's claims. All told, Plaintiff's Complaint fails to state a claim upon which relief can be granted and must be dismissed pursuant to FRCP 12(b)(6).

What is more, Plaintiff's allegations are subject to Arbitration. Mr. Brock Magruder, Esq, husband to Plaintiff, Mrs. Heather Magruder, made

3

certain purchases from Bellabu on November 20, 2022. Subsequently, Mr. Magruder's account with Bellabu, was recorded as "viewing" the Bellabu's Terms of Service on December 16, 2022. He made no additional purchases that day. Days later, on December 20, 2022, Mr. Magruder's spouse, the Plaintiff, created a profile on Bellabu's website and subsequently made the purchase subject to the Complaint. Mr. Magruder is not only the spouse to Plaintiff but practicing partner and equity shareholder at the law firm now representing Mrs. Magruder. The Terms of Service agreement both readily available to Plaintiff, and viewed by her husband days prior to her purchase, is prominently displayed on Bellabu's website. The Terms of Service Agreement requires all disputes sounding in statutory and common law to be submitted to Arbitration.

## ARGUMENT

### I. THE COMPLAINT MUST BE DISMISSED AS PLAINTIFF'S CLAIMS ARE SUBJECT TO AN ARBITRATION AGREEMENT.

"Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of such agreements." *Emp'rs Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001) (citation omitted). So "[w]hen deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally ... should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)

(citations omitted); *see also Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1328 (11th Cir. 2016) (emphasizing the Eleventh Circuit applies state law in determining whether arbitration agreements exists).

In Florida, there are two main types of internet contracts that are enforceable, "clickwrap agreements" and "browsewrap agreements." *MetroPCS Commc'ns, Inc. v. Porter*, 273 So. 3d 1025, 1028 (Fla. 3d DCA 2018). "A 'browsewrap' agreement occurs when a website merely provides a link to the terms and conditions and does not require the purchaser to click an acknowledgement during the checkout process" and "[t]he purchaser can complete the transaction without visiting the page containing the terms and conditions." *Id.* (quotations omitted). Browsewrap agreements are enforceable if "the purchaser has actual knowledge of the terms and conditions, or when the hyperlink to the terms and conditions is conspicuous enough to put a reasonably prudent person on inquiry notice." *MetroPCS*, 273 So. 3d at 1028.

    a.    **Plaintiff had Actual Knowledge of the Terms of Service Agreement**

Mr. and Mrs. Magruder had knowledge of the Terms of Service Agreement prior to the December 21, 2022 purchase.  As Bellabu' Affidavit in support hereof provides, Mr. Brock Magruder, Esq., an attorney a Partner at the firm now representing Mrs. Magruder, made a purchase in November of 2022.   Subsequently, and days prior the December 21, 2022 purchase, Mr.

5

Magruder's account activity opened and viewed Bellabu's Terms of Service Agreement. That data was recorded and now appended to the Affidavit in support of this motion. Notably, Mr. Magruder's activity on December 16, 2022, is *only* to review the Terms of Service. Days later, his spouse, Plaintiff, then registered an account and made a purchase that is subject to this lawsuit. Both Mr. and Mrs. Magruder's purchases were for the same household and shipped to the same house. This is sufficient evidence to show they both had actual knowledge that there was a Terms of Service Agreement, prior to Mrs. Magruder's December 21, 2022, purchase.

### b. The Terms of Service Agreement was Conspicuous

In *MetroPCS*, the Court found that the non-movant was "put on notice" that claims involving his transaction with MetroPCS were subject to Arbitration, where the terms thereof were available by a "hyperlink which he could use to read the terms and conditions." *Id.* at 1029. This hyperlink was indeed a "browsewrap" agreement, of which, a person "has no right to shut his eyes or ears to avoid information, and then say they had no notice." *Id.* (citations omitted). Thus, even in *MetroPCS* where the evidence was that non-movant had not actually clicked the hyperlink, and reviewed the terms of the Agreement, they were nonetheless put on notice, because "the hyperlink to the terms and conditions [was] conspicuous enough to put a reasonably prudent person on inquiry notice." *Id.* at 1028.

6

Not only did Plaintiff and her husband review the Terms of Service Agreement available on Bellabu's website prior to their purchase, by clicking the link, as described above, the link itself is in-fact conspicuous. It is available on every splash page navigated by a consumer. As a consumer selects an item and places that item in their virtual cart, the 'Terms of Service' link becomes more prominently displayed – with only information a reasonably prudent consumer would take notice of (*e.g.,* 'Return Policy' 'Privacy Policy' 'Terms of Service'). Indeed, these links are the only links on the webpage in which the consumer is placing their financial credentials for payment. Thus, because Bellabu Bear LLC's website provided Plaintiff with reasonable notice of the Terms of Service, and Plaintiff proceeded to make purchases from Bellabu Bear's website, the Terms of Service Agreement controls.

    **c.   Terms of Service Agreement Language Applies to the Claims**

The Terms of Service hyperlink provides, under Section 20 thereof, in pertinent part, as follows:

> Dispute Resolution: In the event that there is a dispute, claim, or <u>controversy between you and Us</u>, or between you and Stodge, LLC d/b/a Postscript or any other third-party service provider acting on Our behalf to transmit the mobile messages within the scope of the Program, <u>arising out of or relating to federal or state statutory claims, common law claims</u>, this Agreement, or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope

7

>or applicability of this agreement to arbitrate, such dispute, claim, or controversy will be, to the fullest extent permitted by law, determined by arbitration in Costa Mesa, California before one arbitrator.

(emphasis added).

Plaintiff has brought both a statutory and common law claim, against Bellabu. Accordingly, they are required to arbitrate such claims in Costa Mesa, California, before one arbitrator. Bellabu respectfully requests this Court dismiss the Complaint with prejudice.

## II.   COUNT I FAILS TO STATE A CLAIM

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must have "facial plausibility," meaning it must "plead[] factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Although a complaint need not contain detailed factual allegations, Plaintiff's obligation to provide the grounds of their entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Conclusory allegations "are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709-10 (11th

Cir. 2010); *see also Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 864 (11th Cir. 2017) ("a reviewing court should eliminate any allegations in the complaint that are merely legal conclusions").

### a. Plaintiff's Claim that Bellabu Violated FDUTPA by Failing to Comply with the TFPIA Fails to Allege Facts Sufficient to Support a Claim and Therefore Must be Dismissed Pursuant to FRCP 12(b)(6).

The TFPIA provides clear and unambiguous standards on how persons are permitted to advertise products, such as apparel, that qualify as a "textile." Specifically, under section 70b(c), titled 'False or deceptive advertisement' the TFPIA provides:

> For the purposes of this subchapter, a textile fiber product shall be considered to be falsely or deceptively advertised if any disclosure or implication of fiber content is made in any written advertisement which is used to aid, promote, or assist directly or indirectly in the sale or offering for sale of such textile fiber product, <u>unless the same information as that required to be shown on the stamp, tag, label, or other identification under subsection (b)(1) and (2) is contained in the heading, body, or other part of such written advertisement</u>, except that the percentages of the fiber present in the textile fiber product need not be stated.

15 U.S.C. § 70b(c) (emphasis added). As made clear by the plain language of the statute, if Bellabu's "written advertisement", disclosed the "information" required by "subsection (b)(1) and (2)" of § 70b of the TFPIA, then § 70b(c) precludes it from being a "False or deceptive advertisement." *Id*. Further, the statute permits Bellabu to disclose the subsection (b)(1) and (2) "information"

9

in the "written advertisement" in either the "heading, body, or other part of such advertisement." *Id.*

The "information" required under subsection (b)(1) is that Bellabu's "written advertisement" must provide the "constituent fiber or combination of fibers in the textile product." § 70b(b)(1). Subsection (b)(2) requires the percentage of each fiber disclosed under (b)(1) be listed as well. § 70b(b)(2). In accordance therewith, and as conceded in Plaintiff's Complaint, Bellabu's written advertisement describes the textiles as "95% Rayon from Bamboo, 5% Spandex from Stretch." (Compl., ¶ 25 graphic). Not only is Bellabu's TFPIA-compliant labeling apparent from the face of the Complaint, Plaintiff concedes that the phrase "Rayon from Bamboo" is factually accurate—and therefore incapable of forming the basis of deception. (Compl., ¶ 5). Specifically, Plaintiff alleges that "[r]ayon, is a synthetic fabric made by dissolving cellulose *from bamboo pulp* [. . .]" *Id.* (emphasis added). More plainly stated, "[r]ayon is the generic name from a type of chemically manufactured fiber *made from bamboo*." (Compl., ¶ 16) (emphasis added). In other words, Bellabu disclosed that the product contained "rayon from bamboo," and Plaintiff concedes that rayon is, in-fact, made from bamboo. (Compl., ¶¶ 5, 16).

Plaintiff does not allege "rayon from bamboo" is inaccurate or deceptive – and she could not – as her complaint recognizes. Rather, Plaintiff takes issue with the fact that "rayon from bamboo" does not appear until a consumer clicks

10

the "DESCRPITION" menu, and laments that, "only at the very bottom" are the § 70b(b)(1) and (2) disclosures made. (Compl., ¶ 25). Yet, this allegation fails to state a claim upon which relief can be granted, because the statute specifically permits Bellabu to make the disclosures required under sections § 70b(b)(1) and § 70b(b)(2) of the TFIA in either the "heading, body, or other part of such advertisement." § 70b(c). As Plaintiff's Complaint demonstrates, Bellabu has listed the information in an easily accessible and appropriate "other part of such advertisement" under the non-deceptive heading of "DESCRIPTION." (Compl., ¶ 25). Plaintiff's legal basis for her FDUTPA claim is legally deficient.

It is well settled that "[a]n act or practice required or specifically permitted by federal or state law" cannot form the basis of a claim under FDUTPA. (§ 501.212(1), *Fla. Stat*; *See also, e.g., Brett v. Toyota Motor* Sales, *U.S.A., Inc.,* No. 608CV-1168-ORL-28GJK, 2008 WL 4329876, at *7 (M.D. Fla. Sept. 15, 2008) (explaining that "[a] violation of FDUPTA includes any violation of any of the rules promulgated by the FTC, including the standards of unfairness and deception established by the FTC. Fla. Stat. § 501.203(3)(a)-(b) (2008). However, the opposite is also true. In *Prohias v. Astrazeneca Pharmaceuticals, L.P.,* 958 So.2d 1054, 1056 (Fla. 3d DCA 2007), the Third District Court of Appeal dismissed the complaint after holding that certain promotional and advertising activities fell within the safe harbor provision of

11

FDUPTA because the specific act or practice complained of was "specifically permitted" by federal law.") (citations and quotations original)).

Thus, because the conduct complained of by the Plaintiff here falls squarely within § 70b(c) of the TFPIA, as described above, the "safe harbor" provision of the FDUTPA necessitates dismissal of the complaint pursuant to FRCP 12(b)(6) for failure to state claim. *Id*. As this Court in *Brett* held, where "the act or practice alleged to be misconduct is permissible and required by federal law" then, "as a matter of law the act or practice is not and cannot be the misconduct[]." *Id*. at 8. This is consistent with FDUTPA's legislative purpose to achieve "enforcement consistent with established policies of federal law relating to consumer protection." § 501.202(3), *Fla. Stat*. In accordance therewith, and with eye toward avoiding federal preemption issues, FDUTPA "does not apply to [] [a]n act or practice required or specifically permitted by [the TFPIA]." § 501.212(1), *Fla. Stat*. Bellabu's act and practice of providing the information required by the TFPIA under the "DESCRIPTION" section of their written advertisement is expressly permitted and required by the TFPIA. *See* 15 U.S.C. §§ 70b(1)(2) & 70c. Accordingly, Plaintiff's Count I must be dismissed pursuant to FRCP 12(b)(6).

4874-1114-6329.2

### b. Even If the Court Finds that Plaintiff has Sufficiently Alleged a Violation of the TFPIA, Plaintiff Has Failed to Plead a Legally Cognizable FDUTPA Claim and Must Nonetheless Be Dismissed Pursuant to FRCP 12(b)(6).

A damages claim under FDUTPA requires proof of three elements: (1) a deceptive, unconscionable, or unfair act or practice; (2) causation; and (3) actual damages. See *Gentry v. Haborage Cottages-Stuart, LLLP*, 602 F.Supp.2d 1239, 1256 (S.D. Fla. 2009); *Rebman v. Follett Higher Educ. Grp.*, 248 F.R.D. 624, 631 (M.D. Fla. 2008); *Marino v. Home Depot U.S.A., Inc.*, 245 F.R.D. 729, 737 (S.D. Fla. 2007); *Bookworld Trade, Inc. v. Daughters of Saint Paul, Inc.*, 532 F.Supp.2d 1350, 1364 (M.D. Fla. 2007).

While Plaintiff pleads that conduct permitted by the TFPIA, as discussed *supra*, forms the alleged "deceptive" or "unfair act," Plaintiff curiously makes no effort to plead facts, nor represent to the Court, that the alleged deceptive acts were the "cause" of Plaintiff's December 21, 2022 purchase. (Compl., ¶¶ 33-34). A step further, and consistent with Plaintiff's failure to plead any legally cognizable damage, Plaintiff concedes that upon arrival of the two (2) pajama garments, the garments' "inner label disclosed they were made of 95% rayon and 5% spandex." (Compl., ¶ 35). The Complaint lacks factual allegations of damages because there are none that can be be made.

As this Court has repeatedly explained, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

13

4874-1114-6329.2

suffice." *See, e.g.*, *Carson v. Ocwen Loan Servicing, LLC*, No. 2:18-CV-447-FTM-99CM, 2018 WL 4354815, at *1 (M.D. Fla. Sept. 12, 2018) (quoting *Iqbal*, 556 U.S. at 678); *Aulicino v. McBride*, No. 616CV878ORL31TBS, 2017 WL 2986192, at *2 (M.D. Fla. July 13, 2017). Contrary to this bedrock pleading principle, Plaintiff asks this Court to accept the conclusory representation that "[a]ll damages alleged herein are the direct and proximate result of Bellabu's wrongful conduct." (Compl., ¶ 39). Such a conclusory allegation is precisely the "naked assertion[ ] devoid of further factual enhancement" which is entirely deficient under the applicable pleading standards.

Indeed, Plaintiff wholly fails to allege *any* factual support regarding the purported "damage" which she summarily alleges are the "proximate result" of her purchase. (Compl.) Rather, the allegations in Count I as to damages and causation amount merely to conclusory legal allegations which "are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010); *see also Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 864 (11th Cir. 2017) ("a reviewing court should eliminate any allegations in the complaint that are merely legal conclusions"). For this reason alone, the Court should dismiss Count I.

Moreover, Plaintiff ostensibly seeks to raise what she misapprehends to be a statutory violation. More specifically, Plaintiff misapprehends the

14

necessity of pleading a causal nexus to actual damages in order to establish legal standing. Because of the pleading defects outlined above, Plaintiff's form Complaint—premised on bare-bone conclusory allegations—fails to establish that Plaintiff actually suffered a harm that would provide her with standing. Article III of the United States Constitution "limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992); U.S. Const. art. III, § 2, cl. 1.  Standing consists of three elements: (1) an "injury-in-fact" that is (2) fairly traceable to the defendant's conduct and that is (3) likely to be redressed by a favorable court decision. *Lujan*, 504 U.S. at 560.

Plaintiff has not alleged a concrete harm supporting standing.  In fact, she does not allege how she was damaged in any respect—instead merely pleading her entitlement to statutory damages, which is insufficient to support Article III standing.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 136 (2016) (holding "a bare procedural violation" fails to "satisfy the demands of Article III").

For the foregoing reasons, Count I of Plaintiff's Complaint must be dismissed pursuant to FRCP 12(b)(6) for failure to state a claim, as well as under FRCP 12(b)(1) for want of standing.

15

### III. COUNTS II & III OF PLAINTIFF'S COMPLAINT MUST BE DISMISSED PURSUANT TO FRCP 12(b)(6)

In Counts II and III, Plaintiff attempts to assert claims sounding in fraud under Florida law. (Compl. ¶¶ 54-58, 59-63). Count II seeks to assert a claim of "fraud in the inducement," (Compl. ¶¶ 54-58) and Count III seeks to assert a claim of "negligent misrepresentation," based on the same allegations purportedly underling Count II (Compl. ¶¶ 59-63). As with Count I, however, Plaintiff's Complaint omits any fact allegations as to damages, and whether or not how, or if, the alleged TFPIA violation induced her act to purchase the baby pajamas resulting in the damages, yet to be alleged.

#### A. Failure to Pled the Requisite Elements in Count II.

To state a prima facie claim for fraudulent inducement under Florida law, a Plaintiff must show "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induced another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Dziegielewski v. Scalero*, 352 So. 3d 931, 934 (Fla. 5th DCA 2022) (quoting *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (additional citations omitted). In the context thereof, Plaintiff summarily alleges she has "been damaged," (Compl ¶ 58), to what end – or how – left undisclosed. Plaintiff's Complaint foregoes facts for "formulaic recitation" of elements, and thereby necessitates dismissal pursuant to Rule

16

12(b)(6). *Iqbal*, 556 U.S. at 678. Moreover, Plaintiff fails to plead a materially "false statement" as Plaintiff's complaint concedes that Bellabu disclosed both on its written advertisement, and on the garment, that the product was "95% Rayon from bamboo and 5% Spandex for stretch." (Compl., ¶¶ 5, 16, 25, 35). Accordingly, Plaintiff's failure to plead in accordance with FRCP 8 and 9 necessitate a dismissal of Count II pursuant to FRCP 12(b)(6).

### B.     Failure to Plead the Requisite Elements in Count III.

To state a prima facie claim for negligent misrepresentation under Florida law, all elements from Count II apply, except that instead of alleging Bellabu "knew" the statement was false, they should have known. *Dziegielewski*, 352 So. 3d at 934 (quoting *Simon v. Celebration Co.*, 883 So. 2d 826, 832 (Fla. 5th DCA 2004)). For the reasons articulated above – as illustrated by the Plaintiff's complaint – Plaintiff has failed to allege a materially false statement, but rather conceded Bellabu disclosed what the product is made of (Compl., ¶¶ 5, 16, 25, 35), and that this information as disclosed at the point of sale, and upon receipt of the garments. *Id*. Second, Plaintiff has not – and cannot – make out proximate cause, because Plaintiff has conceded Bellabu disclosed in multiple locations, to include on the garments themselves, the fabric composition; and thus, Plaintiff's complaint is wholly devoid of any allegations of actual damage. For the foregoing reasons,

17

has failed to allege the elements of her claim, and Count III must be dismissed pursuant to FRCP 12(b)(6).

### C. Florida's Independent Tort Doctrine and/or Economic Loss Rule Bars Counts II and III.

Plaintiff's Complaint, devoid of the requisite supporting factual allegations, hinders Bellabu from comprehensively undertaking the analysis whether Florida's independent tort doctrine, and/or Florida's economic loss rule, bar Plaintiff's fraudulent inducement and negligent misrepresentation claims. Even so, the meagre allegations in Plaintiff's Complaint establish that Plaintiff's purchasing the pajamas from Bellabu's website created a contract for the sale of the pajamas giving rise to Plaintiff's claims, including the terms of sale and other provisions posted on Bellabu's website. Thus, Counts II and III, which amount to claims that Bellabu failed to deliver "bamboo" pajamas (as Plaintiff defines the term), are therefore not independent of any purported breach of the contract for sale. Accordingly, such claims are barred by Florida's independent tort doctrine, which only permit tort actions arising independently of those acts establishing the contract's breach. *See, e.g.*, *Peebles v. Puig*, 223 So. 3d 1065, 1069 (Fla. 3d DCA 2017). Put differently, Plaintiff's purported damages in her tort claims—though insufficiently pled—would be

18

the same damages in a breach of contract action based on the sale of the pajamas.[1] Such claims are barred by Florida's independent tort doctrine. *Id.*

Alternatively, or in addition to the foregoing, assuming that Plaintiff claims purely economic losses, including disappointed economic expectations, as a result of the purported misrepresentations, Florida's economic loss rule would bar such tort claims arising in the products liability context. *See, e.g.*, *In re Takata Airbag Prod. Liab. Litig.*, 193 F. Supp. 3d 1324, 1338 (S.D. Fla. 2016) (quoting *Tiara Condo. Ass'n v. Marsh & McLennan Cos. Inc.*, 110 So.2d 399, 401 (Fla. 2013)); *Burns v. Winnebago Indus., Inc.*, No. 8:13-CV-1427-T-24, 2013 WL 4437246, at *1 (M.D. Fla. Aug. 16, 2013) (quoting *Tiara Condo. Ass'n*, 110 So. 2d at 401) (quotation marks omitted). Thus, again, even if Counts II and III had been properly pled – they would be independently barred by Florida law, given the facts as alleged in Plaintiff's Complaint.

### III.  CONCLUSION

For the foregoing reasons, Bellabu Bear LLC respectfully requests this Court Dismiss Counts I-III of Plaintiff's Complaint with prejudice.

Dated March 28, 2023                    Respectfully Submitted,

                                                    **FOLEY & LARDNER LLP**

                                                    By: */s/ Wesley J. Martinez*

---

[1] Indeed, had the pajamas Plaintiff allegedly received contained "bamboo" as Plaintiff defines the term, Plaintiff's claims in this action would be moot.

4874-1114-6329.2

>301 E Pine St., Suite 1200
>Orlando, FL 32801
>Tel: (407) 236-5871
>Facsimile: (407) 678-1743
>KEVIN A. RECK
>Florida Bar No. 505552
>WESLEY MARTINEZ
>Florida Bar No. 1013924
>Email: wmartinez@foley.com;
>kreck@foley.com
>*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that, on March 28, 2023, a copy of the foregoing was served via e-mail to all counsel of record included on the Service List of this action in state court:

Jason Zimmerman, Esq.
Jeff Aaron, Esq.
GrayRobinson P.A.
301 E. Pine Street, Suite 1400
Post Office Box 3068
Orlando, FL 32802-30689
Primary Emails: jason.zimmer@gray-robinson.com;
jeff.aaron@gray-robinson.com
Secondary Email: downs.litigation@gray-robinson.com

>*/s/ Wesley J. Martinez*
>Wesley J. Martinez